Mr. Justice Shepard
delivered the opinion of the Court:
1. The facts hereinabove stated appear without substantial contradiction in the recitals of the bill, answers and depositions. Such additional facts as we have considered *213 established, and which have special relation to the particular questions to be determined, will be adverted to as these are considered in their order.
The motives actuating the managing officers of the appellant in pressing the sale of the property, as well as in the prosecution of suits, after said sale, for recovery of possession and of the balance left unpaid after crediting the proceeds thereof, have been the subject of animadversion on the argument, special emphasis being laid upon their refusal to perform the alleged contract of purchase made with the appellee for the sum of $14,000.
These, however, are matters of no practical importance in the consideration of the case disclosed by the record. Whether a substantial contract, upon valuable consideration, was made between appellant and appellee for the private sale of the property is not in issue here. If such a contract was in fact made and broken by the appellant, the appellee has a remedy either on a bill for specific performance, or in an action for damages. It appears that he filed such a bill and that it has been dismissed. In that disposition he seems to have acquiesced, as no appeal has been prosecuted the:efrom. The remedy at law is open to pursuit. In this view, he clearly will have sustained no injury by reason of the wrongful foreclosure of the deed of trust. On the other hand, if no such contract was in fact made there remains no foundation for complaint.
Whatever effect feelings of hostility on the part of the managers and officers towards the appellee may have had in stimulating them, at last, to the enforcement of the security for his unpaid loan, their action was, nevertheless, in the line of their plain duty. In view of their obligations as trustees of a fund confided to them for prudent investment and diligent safe-keeping, their only apparent dereliction in the premises would seem to consist in the failure to commence proceedings at a much earlier date.
The loan was made, as we have seen, in July, 1896; not *214 a single installment of interest had been paid; and the principal had been due more than a year when the first step was taken in October, 1898. The fact that the appellee was himself a trustee of the fund when the loan was obtained, made his duty of prompt payment all the more binding; it certainly gave him no claim to indulgence. The board of managers would better have performed the high duties of their trust had they refused to loan to a fellow-manager whose private interests might thereby be made to conflict with his duty to his trust.
2. Coming now to the special grounds upon which it is sought to support the decree vacating the sale, we find nothing reasonable in the complaint that the property was sold as a whole without first having been offered in parcels. The lot had never been subdivided by the owner, and was conveyed as a whole; and it requires little testimony to establish the belief that its subdivision for sale into two lots of 12J feet front would have produced no good result. The weight of the evidence supports this view. Moreover, it appears that neither the owner, who witnessed the sale, nor the attorney who attended it in his interest, demanded or even suggested an offer in parcels.
3. That the day of the sale was in the Christmas week, it being neither Sunday nor a legal holiday, affords no ground for the impeachment of its regularity and fairness. Anderson v. White, 2 App. D. C. 408, 420.
Nor was the state of the weather such as reasonably to require postponement. The testimony conclusively shows that the afternoon was w'hat is usually reported as “fair,” there being neither rain nor snow. It was “raw and cold,” but not to the freezing point. Those who attended the sale wore overcoats, but no one testified that the cold was excessive, or so severe as reasonably to deter persons in ordinary health from attending and remaining until the close of the sale. To set aside sales, otherwise fair and regular, because had during weather as above described, would establish a rule *215 practically prohibiting them during midwinter in this climate. Anderson v. White, supra.
4. The third ground of objection to the sale, heretofore stated, and which embodies the substance of several specific items set out in the bill, is, that there were no bona fide bidders present., and the property was sold to the appellant without genuine competitive bidding, at a price fixed by it, which virtually amounted to a private sale for that price.
The testimony does not sustain these charges. The sale had been regularly advertised for a late day in October, and, having been restrained on the bill filed by appellee, was regularly readvertised when that impediment was removed. Two adjournments were had on account of bad weather; one with the express consent, and the other without the objection, of the appellee. There is not a particle of testimony tending to establish an inference even that there was any collusion between the appellant and the trustees, or attempt to suppress competitive bidding at the sale. It is true that very few persons attended the sale, and that most of these consisted of the trustees, auctioneers and agents and friends of creditor and debtor. But this can not be attributed to the want of proper advertising, to improper conduct of trustees or beneficiary, or to special inclemency of the weather. The lack of general interest in such sales is one of the risks that the mortgagor must be presumed to take into consideration when he executes the mortgage. The mortgagee usually guards against it by leaving a reasonable margin between the loan and the estimated cash value of the security.
The sale was formally opened with this attendance and bids asked for in the usual manner. The first bid of $8,500 was made on behalf of the appellant. After an interval, a stranger to all present offered $9,000. The appellant then made a second bid of $9,500. This was cried for sometime without eliciting an advance, and the property was declared sold to the appellant. There is nothing to indicate collusion *216 between, the representatives of the purchaser and this stranger. The effect of his bid was to advance the price paid for the property one thousand dollars.
That no other bids were offered does not prove that there were no other possible purchasers present. One of the fitnesses for the appellee, who attended the sale as his friend and closely watched the proceedings from beginning to end, testified that there was a person present, whose name was to him unknown, whom he regarded, from his remarks, as one intending to bid on the property.
When the announcement of the pending litigation was made by the appellee’s attorney, this person was asked if he intended to make an offer. His reply was: “ No; I don’t care to buy a law suit.” He was called on two or three times, but declined to bid. He may possibly, however, have been the person who made the second bid. Whether so or not, it nowhere appears that he would have offered more than the bid of $9,500 had there been no apprehension of litigation arising out of the purchase. At any rate, his abstention could only be attributed either to his unwillingness to offer more than $9,500, or to the warning given by the appellee’s attorney. If attributable to the first cause, no damage acci ued; if to the latter, the appellee has himself to blame. As shown by the prearranged warning to purchasers, his policy was to prevent a sale through the intimidation of prospective bidders. For these reasons, it hardly lies in his mouth to object now to the consummation of the sale because there were not enough actual bidders to produce fair competition.
We are aware of no rule of law that requires the attendance of a certain number of prospective bidders upon a sale, or that a fixed number of bids, exceeding one, shall be actually offered in order to make the sale regular and confer title upon the purchaser thereat.
We can reasonably conceive valid sales made upon the first and only bid offered. It might be that many expectant bidders would be present and yet none willing to raise *217 the first offer. If such a sale should be, in all other respects, fair and regular, and the price not grossly inadequate, it surely would not be invalidated on that ground.
5. The last ground of objection is on account of the inadequacy of the price obtained. As is commonly the case, the evidence of the value of the lot was widely variant. Some witnesses expressed the opinion that the price obtained was all that the property was worth. Others, on behalf of the appellee, valued it at from $15,000 to $18,000. It is not necessary to determine the actual value of the property ; in fact it would be impossible to do so. It is sufficient, for present purposes, to say, that, upon a careful examination of all the evidence tending to show the foundations of the opinions of witnesses, and their means of knowledge, our conclusion is that the price obtained is certainly not less than might have been expected at a forced sale under ordinary circumstances. The owner’s own determined effort to force the property upon the mortgagee at the price of $14,000 is sufficient contradiction of those who valued it at more than that sum. He had owned it for more than fifty years, and lived across the alley from it. He alone knew the cost of the improvements, and the annual charges for repairs, and the constant net value of rentals. For this reason also, as well as others, we attach no weight to the evidence concerning the valuation of the property by the appellant’s managers at the time the loan was made in July, 1896. It appears that it was a rule of the managers to carefully appraise property offered as security for a solicited loan, and to limit the amount of the loan to one-half of this appraised value. A regular committee was charged with the appraisement and it was its duty to report the result in writing. An exception to this rule was made in the case of the appellee, who was himself one of the managers at the time. No written. repoi’t was made, and all that has been made to appear is, that the committee reported verbally that the security was sufficient. We have heretofore seen, that there was nothing in the time, place, conduct, or conditions *218 surrounding the sale, tending to show misconduct or neglect on the part of the trustees, or fraud or wrongdoing on the part of the appellant. If then, there was anything in connection with the conduct of the sale tending directly to prevent the realization of a greater price than $9,500, it was the warning given by the appellee. The trustees did all that was in their power to counteract the effect of this announcement, by giving notice that the purchaser would not be required to accept anything but a good title. In an opinion in a former case of this nature we had occasion to use the following words, which are equally applicable to the facts of this case: “The only conduct at the sale likely to prevent full competition among bidders was that of complainant’s agent, who gave notice of the invalidity of the sale and of the pending litigation. If this protest, which is probable, caused the property to bring less than it might otherwise have done, the complainant has herself to blame for it. She can not visit the consequences of her own act upon the lien creditor, who did all that he could to counteract them by promising complete indemnity from all loss and damage to whomsoever might make the successful bid.” Wheeler v. McBlair, 5 App. D. C. 375, 383: S. C. 172 U. S. 643.
It would seem that on the hearing below, attention was not called to either the foregoing case or that of Anderson v. White, before cited. Had it been, the result would probably have been different. In both of those cases we undertook to define in general terms the duties of trustees in making sales under the authority of the ordinary trust deed to secure creditors, in common use in this jurisdiction, and to discriminate between the discretion imposed upon them and that intrusted to other trustees in general.
Applying those principles to the facts of this case, as they appear in the record, we find no support for the decree appealed from, which must therefore be reversed, with costs. The cause will be remanded with direction to set aside the decree vacating the sale, and dismiss the bill. Reversed.